UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| CONTRINA LACRETRICA BELL, | ) | Civil Action No. 3:25-cv-13365-SAL-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| MASTER DEPUTY COLLINS J. HARPER, | ) | |
| Badge No. 8580-2859, in his individual and | ) | |
| Official capacities; RICHLAND COUNTY | ) | |
| SHERIFF'S DEPARTMENT; and LEON | ) | |
| LOTT, in his official capacity as Sheriff of | ) | |
| Richland County, | ) | |
| | ) | |
| Defendants. | ) | |

## I.      INTRODUCTION

This action arises from Plaintiff's arrest on September 16, 2025.   Plaintiff alleges claims

under the Fourth Amended for unlawful seizure, search, unreasonable force, and false arrest; under

the Fifth Amendment for retaliation; and under the Fourteenth Amendment based on substantive

due process. She also asserts a claim for municipal liability under *Monell v. Dep't of Soc. Servs.

of City of New York*, 436 U.S. 658 (1978). Presently before the Court is Defendants' Motion for

Summary Judgment (ECF No. 36). Because she is proceeding pro se, Plaintiff was advised

pursuant to *Roseboro v. Garrison*, 528 F.3d 309 (4th Cir. 1975), that a failure to respond to

Defendants' motion could result in the motion being granted and her claims being dismissed.

Plaintiff has not filed a Response. All pretrial proceedings in this case were referred to the

undersigned pursuant to the provisions of 28 U.S.C.  § 636(b)(1)(A) and (B) and Local Rule

73.02(B)(2)(d), DSC.   This report and recommendation is entered for review by the District

1

Judge.

## II.    RULE 41(B)

"The Federal Rules of Civil Procedure recognize that courts must have the authority to control litigation before them, and this authority includes the power to order dismissal of an action for failure to comply with court orders. Fed.R.Civ.P. 41(b)." *Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989).   The Fourth Circuit, in *Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978), recognizing that dismissal with prejudice is a harsh sanction which should not be invoked lightly, set forth four considerations in determining whether Rule 41(b) dismissal is appropriate:   (1) the degree of personal responsibility on the part of the plaintiff; (2) the amount of prejudice to the defendant caused by the delay; (3) the presence or absence of a drawn out history of deliberately proceeding in a dilatory fashion; and (4) the effectiveness of sanctions less drastic than dismissal. *Id.* at 70.

Subsequently, however, the Fourth Circuit noted that "the four factors ... are not a rigid four pronged test."   *Ballard*, 882 F.2d at 95. "Here, we think the Magistrate's explicit warning that a recommendation of dismissal would result from failure to obey his order is a critical fact that distinguishes this case from those cited by appellant. . . . In view of the warning, the district court had little alternative to dismissal.   Any other course would have placed the credibility of the court in doubt and invited abuse." *Id.* at 95 96.

In the present case, the undersigned entered a *Roseboro* Order (ECF No. 37) warning Plaintiff that a failure to respond to Defendants' motion could result in dismissal of her case. Plaintiff has failed to respond to Defendants' motion.   It is solely through Plaintiff's neglect, and not that of an attorney, that Plaintiff has failed to respond to the motion.   Defendants cannot come

2

to a resolution of this case if Plaintiff fails to prosecute it.   Accordingly, the undersigned concludes that Plaintiff has abandoned her claims in this case. For that reason, dismissal of this action is appropriate under Rule 41(b). In the alternative, the merits of Plaintiff's claims as challenged in Defendants' Motion for Summary Judgment are discussed below.

## III.   MERITS

### A.   Facts

In her Amended Complaint, Plaintiff alleges that on September 16, 2025, Master Deputy Collins Harper (Deputy Harper) pulled Plaintiff over for speeding, but she was not speeding and that charge was later dismissed. Am. Comp. ¶¶ 10-11 (ECF No. 20). Plaintiff invoked her right to remain silent when Deputy Harper made several requests for her license and registration. Am. Compl. ¶¶ 12-13. Deputy Harper threatened to bust Plaintiff's windows and drag her from her vehicle, but Plaintiff voluntarily exited her vehicle. Am. Compl. ¶¶ 15-16. Deputy Harper immediately handcuffed Plaintiff when she exited her vehicle, even though Plaintiff was calm and compliant. He also pushed her twice while she was in handcuffs. Am. Compl. ¶¶ 17-18. Deputy Harper then searched Plaintiff's vehicle without consent and removed her identification without lawful justification. Am. Compl. ¶¶ 21-22. Plaintiff was forced to stand handcuffed in the heat for approximately one hour. Am. Compl. ¶ 23. She was then transported to the detention center, booked, and fingerprinted without being shown a warrant. Am. Compl. ¶ 24.

The evidence in the record does not support Plaintiff's unsworn factual allegations. Deputy Harper avers that he was on patrol along Bluff Road in Richland County, South Carolina on September 16, 2025, when he observed the Plaintiff's vehicle traveling 51 m.p.h. in a 35 m.p.h. zone. *See* Harper Aff. ¶ 5 (ECF No. 36-1); Incident Report p. 2 (ECF No. 36-2). Plaintiff's speed

3

was confirmed through Deputy Harper's department issued radar. *Id*. Deputy Harper initiated a traffic stop and Plaintiff pulled over shortly thereafter. *Id*.

Deputy Harper approached the vehicle's driver's side door and spoke with Plaintiff through the window, which was rolled down approximately two inches. Incident Report pp. 2-3*; see also, generally*, Body-Worn Camera Video (BWC Video) at 1:00-1:15.[1] Deputy Harper identified himself to Plaintiff and explained the reason for the stop. Incident Report p. 2; BWC Video at 1:00-1:20. As part of his introduction, he requested Plaintiff's driver's license and registration. *Id*. In response to Deputy Harper's request for her license and registration, Plaintiff stated that she was "using her rights, anything I say or do can be used against me" or words to that effect. BWC Video at 01:30-01:38. Deputy Harper then reiterated his request for Plaintiff to identify herself with her license and registration, in response to which Plaintiff shook her head. BWC Video at 01:37-01:45. Deputy Harper continued to ask for her to present her license and registration, to which Plaintiff continued to refuse and stated that she was "using her constitutional rights." BWC Video, at 01:45-02:17. Over the next several minutes, Deputy Harper repeatedly attempted to convince Plaintiff to provide her license or identifying information and she repeatedly refused or otherwise did not respond. Incident Report p. 3; BWC Video at 01:45-04:30. Deputy Harper advised Plaintiff that her window would most likely be "broke open" and she would be "ripped out of the car" for failure to identify. BWC Video at 03:38-03:47. After initially refusing, Plaintiff eventually voluntarily exited the vehicle, at which point she was placed in handcuffs for failing to identify herself. BWC Video at 04:30-05:00. At this point, Plaintiff was standing at the driver's side door of her vehicle, which was parked in the travel lane. BWC Video at 05:30-06:00. Deputy

---

1 Time references to the BWC video are references to the elapsed time counter of the video as opposed to the time stamp at the top right of the video.

Harper then physically escorted Plaintiff to the front of his patrol vehicle, which was parked behind Plaintiff's vehicle. *Id.*

Plaintiff was placed under arrest, after which Deputy Harper began a pre-tow inventory search of Plaintiff's vehicle. BWC Video at 06:15-07:15. During the inventory search, Deputy Harper located a purse, which Plaintiff indicated was her purse that she wanted to take to the detention center with her. BWC Video, at 07:15-07:45. In a wallet inside of the purse, Deputy Harper located an "international driver's license" bearing Plaintiff's name and date of birth. *Id.* Deputy Harper also located Plaintiff's South Carolina identification card. BWC Video at 07:53. After running Plaintiff's information through the DMV, Deputy Harper learned that Plaintiff's driver's license was suspended. Incident Report p. 3; BWC Video at 24:42.

Plaintiff was charged with speeding (S.C. Code Ann. § 56-5-1520), driving under suspension second offense (§ 56-1-460(A)(2)), driving without a license (§ 56-1-20), and failure to identify (§ 56-1-190). Incident Report p. 3. Her vehicle was towed from the scene and she was then transported to the detention center. Incident Report p. 3; BWC Video, at 26:51-36:00. In total, Plaintiff was handcuffed on the side of the road for approximately 30 minutes while awaiting the tow truck and while Deputy Harper completed the necessary paperwork before she was placed in the patrol vehicle and transported to jail. BWC Video at 05:00-38:00.

On February 26, 2026, Plaintiff was tried in absentia and convicted of each of the four charges brought by Deputy Harper. Harper Aff. ¶ 11. According the public index, Plaintiff has not filed an appeal or any other filing relating to these charges since that time. *See* https://publicindex.sccourts.org/Richland/PublicIndex/PISearch.aspx (last accessed June 30, 2026).

**B.      Standard of Review**

Under Fed.R.Civ.P. 56, the moving party bears the burden of showing that summary judgment is proper.   Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.   Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. *Id.* Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).   The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).   The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.   *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991).   However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.   *Barber v. Hosp. Corp. of Am.*, 977 F.2d 874-75 (4th Cir. 1992).   The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."   *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.   *See Celotex*, 477 U.S. at 324.   Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the

record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); *see also Cray Communications, Inc. v. Novatel Computer Systems, Inc.*, 33 F.3d 390 (4th Cir. 1994); *Orsi v. Kickwood*, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

### C.    Discussion

Plaintiff first alleges that her Fourth Amendment rights were violated when Deputy Harper "seized, handcuffed, detained, searched, and arrested Plaintiff without reasonable suspicion or probable cause." Am. Compl. ¶ 29. However, summary judgment is appropriate as to this claim because she has been convicted of the charges brought against her as a result of the September 16, 2025, traffic stop, and those convictions have not been disturbed on appeal or otherwise.

In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court held that

> to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

To determine whether a particular § 1983 claim is barred by this rule, the court must "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. "[I]f it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* Plaintiff was convicted of each of the four charges brought against her as a result of the traffic stop at issue in this case. Her claims for unlawful search and seizure would imply the invalidity of those

convictions and, therefore, are barred by *Heck*. Therefore, summary judgment is appropriate as to Plaintiff's claims for unlawful search and seizure.

Plaintiff also alleges that Deputy Harper used objectively unreasonable force against her when he made threats of violence against her, physically pushed her while restrained, and left her in handcuffs in the heat for a prolonged period of time. In analyzing a claim of unreasonable force during an arrest, the court considers whether the force was objectively reasonable in light of the facts and circumstances of each case. *See Lombardo v. City of St. Louis*, 594 U.S. 464, 466 n.2 (2021). The court looks to the totality of the circumstances at the moment the force was employed. *Somers v. Devine*, 132 F.4th 689, 698 (4th Cir. 2025) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Based on the evidence presented in this case, no reasonable juror could find that any force used by Deputy Harper during Plaintiff's arrest was objectively unreasonable such that it violated her constitutional rights. Though Plaintiff alleges that Deputy Harper pushed her twice while she was in handcuffs, the body worn camera footage reveals that at the time Plaintiff accused him of pushing her, Deputy Harper only took Plaintiff by the arm and guided her from her vehicle to his vehicle. There is no evidence in the record that Deputy Harper ever pushed Plaintiff while she was in handcuffs or otherwise.

Further, though Deputy Harper threatened to use force to remove Plaintiff from her vehicle if she continued to refuse to provide identification, Plaintiff ultimately exited the vehicle voluntarily, and no physical force was utilized. "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Plaintiff fails to show that the threat of force announced by Deputy Harper, which

8

did not materialize, was objectively unreasonable.

Finally, there was no objectively unreasonable use of force in requiring Plaintiff to stay in handcuffs while Deputy Harper completed the paperwork necessary to transport her to the detention center. She does not allege that the handcuffs were too tight or that she suffered any other pain or injury as a result of staying in the handcuffs in the heat for approximately thirty minutes. For these reasons, summary judgment is appropriate on Plaintiff's claim of excessive force.

Plaintiff also alleges a "Fifth Amendment: Retaliation" claim, asserting that she was arrested in retaliation for exercising her right to remain silent and not identify herself after being pulled over by Deputy Harper. The Supreme Court has held that "[t]he principles of *Terry* permit a State to require a suspect to disclose his name in the course of a Terry stop." *Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cnty.*, 542 U.S. 177, 187 (2004).[2] Thus, an arrest pursuant to a statute requiring a person to identify herself when she fails to do so is constitutionally valid, and summary judgment is appropriate. *Id.* at 188 ("A state law requiring a suspect to disclose his name in the course of a valid *Terry* stop is consistent with Fourth Amendment prohibitions against unreasonable searches and seizures.").

Plaintiff's conclusory allegation under the Fourteenth Amendment that "[Deputy] Harper's conduct was arbitrary, oppressive, and conscience-shocking" and that "the conduct lacked any legitimate governmental purpose" fails as well. This claim is not sufficiently pleaded, and appears

---

[2] The statute at issue in *Hiibel* was a Nevada statute stating that "[a]ny person so detained shall identify himself, but may not be compelled to answer any other inquiry of any peace officer." NRS § 171.123(3). In the present case, Plaintiff was charged pursuant to S.C. Code Ann. § 56-1-190, which provides that "[a] licensee shall have his license in his immediate possession at all times when operating a motor vehicle and shall display it upon demand of an officer or agent of either the Department of Motor Vehicles or the Department of Public Safety or a law enforcement officer of the State."

to be a repeat of her claims for unlawful search and seizure. Summary Judgment is proper.

Plaintiff also asserts a municipal liability claim against "Defendants," presumably Richland County Sheriff's Department and Leon Lott.[3] A municipality or other local government entity may only be held liable under 42 U.S.C. § 1983 "where the constitutionally offensive actions of [ ] employees are taken in furtherance of some municipal 'policy or custom.'" *See Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). As discussed above, Plaintiff has failed to present sufficient evidence of any "constitutionally offensive actions" by Deputy Harper. "Supervisors and municipalities cannot be liable under § 1983 without some predicate constitutional injury at the hands of the individual state officer, at least in suits for damages." Evans v. Chalmers, 703 F.3d 636, 654 (4th Cir. 2012). Further, Plaintiff has failed to adduce any evidence that her arrest (which itself must be a constitutional violation) was caused by an unconstitutional policy or custom. Therefore, summary judgment is appropriate.

## IV.    CONCLUSION

For the reasons discussed above, it is recommended that this case be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for Plaintiff's failure to prosecute. In the alternative, it is recommended that Defendants' Motion for Summary Judgment (ECF No. 36) be granted and this case be dismissed in its entirety.

---

3Both in the present motion and in a separately filed Motion to Dismiss (ECF No. 22), Defendants Richland County Sheriff's Office and Leon Lott argue that they are entitled to Eleventh Amendment Immunity. Given the Supreme Court's recent holding in *Galette v. New Jersey Transit Corp.*, 607 U.S. 509, 146 S. Ct. 854, 224 L. Ed. 2d 322 (2026) and its remand of *Williams v. Charleston Cnty. Sheriff's Off.*, 224 L. Ed. 2d 270 (Mar. 23, 2026) for further consideration by the Fourth Circuit in light of *Galette*, the undersigned finds it prudent to decline to address this argument at this time. If the District Judge adopts the recommendation herein, the Motion to Dismiss will be moot.

s/ Thomas E Rogers III

Thomas E. Rogers, III
United States Magistrate Judge

July   2  , 2026.
Florence, South Carolina

**The parties' attention is directed to the important information on the attached page.**